UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHRISTOPHER O. BRANDT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 1:15-cv-461-NT |
| | ) |
| JOSEPH FITZPATRICK, in his official capacity as COMMISSIONER, MAINE DEPARTMENT OF CORRECTIONS, SCOTT LANDRY, and LISA NASH, | ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

### ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND DEFENDANTS' MOTIONS TO DISMISS

Before me are the Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF Nos. 9, 10) and the Plaintiff's motion for leave to amend his Complaint pursuant to Rule 15(a). (ECF No. 15). For the reasons stated below, the Defendants' motions to dismiss are **GRANTED IN PART** and **DENIED IN PART** and the Plaintiff's motion for leave to amend is **GRANTED.**

### BACKGROUND

The Proposed Amended Complaint ("**PAC**") (ECF No. 15-1) alleges the following facts which are accepted as true for purposes of this motion. Plaintiff Christopher Brandt is an African-American veteran who was employed by the Maine Department of Corrections ("**MDOC**") as a correctional officer for approximately two years. PAC ¶¶ 4, 7. Brandt applied for seven open positions in the probation department and "was referred by MDOC's Human Resources for an interview each

time." PAC ¶¶ 8, 10. Each job announcement encouraged minorities, preference eligible veterans, and other MDOC employees to apply. PAC ¶ 9. Defendant Scott Landry supervised Brandt's interviews in Augusta, and Defendant Lisa Nash was in charge of Brandt's interviews in Portland. PAC ¶ 10.

The interviews did not go well. Landry interviewed Brandt twice; both ended shortly after they began with Brandt being "escorted out of the office without any explanation." PAC ¶ 11. Nash interviewed Brandt multiple times. PAC ¶¶ 10-11. During one interview, Nash "was extremely offensive and argued with [Brandt] when he began sharing his background and qualifications." PAC ¶ 13. Although he has a master's degree, Brandt later received letters explaining that "he did not meet the minimum qualifications." PAC ¶ 10; MHRC Invest. Report 2 (ECF No. 1-1).[1]

Landry and Nash are both white. PAC ¶ 10. At each interview, the other applicants waiting to be interviewed in the waiting area were all younger white men and women. PAC ¶ 14. Brandt was the only African-American around the age of 40 waiting to be interviewed. PAC ¶ 14. Younger white applicants who were not current MDOC employees were eventually hired for the positions. PAC ¶ 1. Other African-American MDOC employees told Brandt that they were made to feel inferior and unqualified because of their race when they interviewed with Landry and Nash. PAC ¶ 15. One African-American MDOC officer informed Brandt "that he had personally

---

[1] Brandt attached this document and others as exhibits to his original Complaint, thereby incorporating them into his pleading. *See Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 195 n.1 (1st Cir. 2001). He neglected, however, to attach these documents to the Proposed Amended Complaint ("**PAC**") (ECF No. 15-1). The Clerk's Office is directed to attach these documents to the PAC when it is refiled on the docket.

interviewed with Scott Landry and Lisa Nash ten times and was never offered a position." PAC ¶ 15. Another co-worker told Brandt that the MDOC "sought to hire younger employees and recent college graduates because they would be more likely to stay on the job longer." MHRC Invest. Report 2.

Because of his treatment at these interviews, Brandt wrote a letter to former-MDOC Commissioner Joseph Ponte. PAC ¶ 12. The letter specifically mentioned Landry. PAC ¶ 12. Ponte informed Brandt that he would look into the matter. PAC ¶ 12. Brandt also filed a complaint against the MDOC with the Maine Human Rights Commission ("**MHRC**"). PAC ¶ 12.

Later on, Landry became the Warden of the Maine Correctional Center. PAC ¶ 16. "Fearing further hostility, [Brandt] resigned from his position at the Maine Correctional Center to pursue a position with the Federal Bureau of Prisons." PAC ¶ 16. But two weeks after his resignation, Brandt reapplied for several positions at the Maine Correctional Center. PAC ¶ 16. He subsequently received a letter from Landry stating that "you will not be considered further for the correctional officer position because you lied on your employment application." PAC ¶ 16. Brandt claims that he did not lie on his employment application. *See* PAC ¶ 18. He also later learned that he was the only applicant who was subjected to a background investigation for that job. PAC ¶ 17.

## PROCEDURAL HISTORY

On November 16, 2015, Brandt filed a four-count federal Complaint. Compl. (ECF No. 1). The named Defendants are Landry, Nash, and MDOC Commissioner

Joseph Fitzpatrick.[2] Compl. ¶¶ 5-6. In Count One, Brandt alleges racial discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq*. Compl. ¶¶ 21-22. Count Two alleges age discrimination in violation of the Age Discrimination in Employment Act ("**ADEA**"), 29 U.S.C. § 623. Compl. ¶¶ 23-24. Count Three alleges retaliation claims under Title VII and the ADEA. Compl. ¶¶ 25-26. And in Count Four, Brandt alleges violations of the Veteran Employment Opportunity Act ("**VEOA**"), 5 U.S.C. 3330a, *et seq*. Compl. ¶¶ 27-28. The Complaint and the Plaintiff's briefing also reference disability discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq*., and the Americans with Disabilities Act ("**ADA**"), 42 U.S.C. § 12101 *et seq. See* Compl. ¶ 1.; Pl.'s Opp'n to MDOC's Mot. to Dismiss 9 (ECF No. 17). The Plaintiff does not make clear which counts pertain to which Defendants.

The Defendants moved to dismiss the Complaint. Nash's Mot. to Dismiss (ECF No. 9); Me. Dept. Of Corrections & Landry's Mot. to Dismiss ("**MDOC's Mot. to Dismiss**") (ECF No. 10). After filing oppositions to the Defendants' motions to dismiss, Brandt moved for leave to amend his Complaint. (ECF No. 15). The PAC added a Fifth Count for "[r]acial discrimination in violation of 42 U.S.C. § 1983" against all of the Defendants. PAC ¶¶ 29-30. The remaining claims and factual allegations in the PAC are identical[3] to the allegations in the original Complaint.

---

[2]   Brandt is suing Fitzpatrick in his official capacity as the Commissioner of MDOC. PAC ¶ 5. Because the government entity is "the real party in interest" in official capacity lawsuits, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), I follow the parties' lead and refer to Fitzpatrick and the MDOC interchangeably.

[3]   Because the remaining claims and factual allegations are identical, I have used the PAC in evaluating the Defendants' motions to dismiss.

4

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a), a plaintiff seeking to amend his complaint more than "21 days after service of a motion under Rule 12(b)" must obtain the written consent of the opposing party or leave of court.[4] Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend should not be granted if, *inter alia*, the "amendment would be futile."*Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004) (citation omitted). " 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). "In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." *Morgan v. Town of Lexington*, 823 F.3d 737, 742 (1st Cir. 2016) (citation omitted).

In order to survive a motion to dismiss under Rule 12(b)(6), the "complaint 'must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face.' " *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility inquiry consists of two steps:

> First, the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited). Second, the court must consider whether the winnowed residue of factual allegations gives rise to a plausible claim to relief.

---

[4]   Brandt filed his motion to amend the Complaint more than 21 days after the Defendants moved to dismiss. Thus, Brandt needs the Court's leave to file his proposed Amended Complaint.

*Rodríguez–Reyes v. Molina–Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (citation omitted). Ultimately, the court "must 'determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable.' " *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015) (quoting *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013)).

Brandt is proceeding pro se, which weighs "in favor of a liberal reading" of his Complaint. *Rodi v. S. New England Sch. Of Law*, 389 F.3d 5, 13 (1st Cir. 2004). Accordingly, I interpret his pleadings in light of his supplemental submissions in order "to understand the nature and basis of his claims against these defendants." *Wall v. Dion*, 257 F. Supp. 2d 316, 318 (D. Me. 2003).

## DISCUSSION

Nash and Landry contend that the claims in the PAC are futile and must be dismissed because they fail to state plausible claims for relief. The MDOC does not oppose Counts One and Three of the PAC, but contends that the remaining claims fail.

## I. Title VII, ADEA & Disability Discrimination—Counts One to Three

### A. Nash & Landry

These claims fail to state a claim because none of the statutes provide for individual liability. The First Circuit has held that "there is no individual employee liability under Title VII."[5] *Fantini v. Salem State Coll.*, 557 F.3d 22, 31 (1st Cir. 2009).

---

[5] The Plaintiff's reliance on *Vance v. Ball State Univ.*, 133 S. Ct. 2434 (2013) is misplaced. *Vance* merely decided who qualifies as a supervisor in a Title VII workplace harassment case for purposes of

6

The First Circuit has not directly addressed whether the ADEA imposes individual employee liability, but "almost all circuits that have addressed the issue have determined that individual liability is not authorized." *Orell v. UMass Mem'l Med. Ctr., Inc.*, 203 F. Supp. 2d 52, 64 (D. Mass. 2002) (collecting cases). Given the "similarities between Title VII and the ADEA, it is virtually impossible to imagine that the Court of Appeals would read the ADEA to contemplate individual liability." *Gascard v. Franklin Pierce Univ.*, No. 14-220-JL, 2015 WL 1097485, at *7 (D.N.H. Mar. 11, 2015). To the extent Brandt asserts claims against Nash and Landry for disability discrimination under the ADA and Rehabilitation Act, these claims fail for the same reason. *See, e.g., Román-Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43, 52 (1st Cir. 2011) (ADA); *Flood v. Maine Dep't of Corr.*, No. 1:11-270-DBH, 2012 WL 5389533, at *10 (D. Me. Aug. 24, 2012) (ADA and Rehabilitation Act). Accordingly, these claims are dismissed against Defendants Nash and Landry.

**B.    MDOC**

The MDOC contends that Brandt has failed to state a plausible claim under the ADEA. In order to make out a prima facie case of age discrimination in a failure to hire claim, a plaintiff must establish:

> (1) that she was at least forty years old at the time of the failure to hire, (2) that she was qualified for the position, (3) that she was not hired, and (4) that the employer did not treat age neutrally or filled the position or positions with younger people of similar qualifications.

---

determining an *employer*'s vicarious liability. *See id.* at 2441-42. Contrary to the Plaintiff's position, *Vance* does not provide for individual *employee* liability under Title VII.

7

*Joyce v. Postmaster Gen., U.S. Postal Serv.*, No. 2:10-310-JAW, 2013 WL 300754, at *12 (D. Me. Jan. 25, 2013) (citing *Cruz v. Bristol–Myers Squibb Co.*, 699 F.3d 563, 571 (1st Cir. 2012)). "The burden of making out a prima facie case is not onerous." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 823 (1st Cir. 1991) (citation omitted).

Brandt has alleged that he is over 40 years old and holds a master's degree. PAC ¶ 4; MHRC Invest. 2. He is also a minority, a veteran, and, at the time he was turned down for these positions, he was employed by the MDOC as a corrections officer. PAC ¶¶ 4, 7, 14. The MDOC encouraged applicants with these characteristics to apply for job openings. PAC ¶ 9. All of the other applicants that Brandt observed, however, were younger men and women who were not employed by MDOC. PAC ¶14. And these younger applicants were eventually hired for the positions Brandt sought. PAC ¶ 1. In addition, Brandt learned from a co-worker that the MDOC "sought to hire younger employees and recent college graduates because they would be more likely to stay on the job longer." MHRC Invest. 2. These allegations, taken as true and mindful that the Plaintiff is proceeding pro se, state a plausible claim under the ADEA.

The MDOC cites two cases where similar ADEA claims were dismissed. MDOC's Mot. to Dismiss 7-8 (citing cases). These cases, however, are distinguishable as neither involved a pro se litigant. It is well-established that "a pro se complaint 'can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Mackenzie v. Nelson*, No. 13-13081-DJC, 2015 WL 1308800, at *1 (D. Mass.

8

Mar. 23, 2015) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Accordingly, the MDOC's motion to dismiss this claim is denied.

Turning to disability discrimination, in order to state a claim under the ADA or the Rehabilitation Act,[6] a plaintiff must "allege facts showing that (1) he was disabled within the meaning of the Act; (2) he could perform the essential functions of his job, with or without reasonable accommodation, and (3) the employer took adverse action against him, in whole or in part, because of his disability." *Román-Oliveras*, 655 F.3d at 48. In this case, the PAC fails to allege a plausible claim for disability discrimination. The single reference in the PAC that could be construed as relating to the Plaintiff's disability discrimination claim states:

> [D]ocuments received from the Maine Human Rights Commission's investigation revealed[] Plaintiff was the only applicant who served in the military, was a disabled veteran with a service connected disability of 30% or more, and had a combat metal, but the Plaintiff was not given veteran preference for the . . . positions.

PAC ¶ 14. The PAC is devoid of any allegations regarding the nature of the Plaintiff's alleged disability. And the PAC neither alleges nor suggests that the Defendants

---

[6] "[C]ase law construing the ADA generally pertains equally to claims under the Rehabilitation Act." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004).

discriminated against him on the basis of his alleged disability.[7] Thus, Brandt's claim for disability discrimination is dismissed.[8]

## II. VEOA—Count Four

As the Defendants point out, the Plaintiff's VEOA claim fails because the statute only applies to federal agencies. The VEOA was enacted to "provide preference eligible veterans with a method for seeking redress where their veterans' preference rights have been violated in hiring decisions made by the *federal government*." *Kirkendall v. Dep't of Army*, 479 F.3d 830, 837 (Fed. Cir. 2007) (emphasis added). The VEOA provides that "[a] preference eligible [veteran] who alleges that an agency has violated such individual's rights . . . may file a complaint with the Secretary of Labor." 5 U.S.C. § 3330a(a)(1)(A). "[T]he term 'agency' means an Executive agency . . . ." 5 U.S.C. § 3330(a). Because none of the Defendants are federal agencies, the VEOA is inapplicable.[9]

---

[7]     Brandt points out that failing to accommodate a disability is also a form of disability discrimination and contends that the Defendants were "aware of [his] disability but did not extend any considerations during the hiring process." Pl.'s Opp'n to Nash's Mot. to Dismiss 9 (ECF No. 16). But to make a plausible claim for failure to accommodate, Brandt must still plausibly allege that he suffers from a physical or mental impairment that substantially limits a major life activity. *Calero-Cerezo*, 355 F.3d at 20. And a failure to accommodate claim also requires the plaintiff to request an accommodation that "was sufficiently direct and specific so as to put the employer on notice of the need for an accommodation." *Enica v. Principi*, 544 F.3d 328, 338 (1st Cir. 2008). The PAC does not contain these necessary allegations.

[8]     The MDOC correctly notes that any claim under Title I of the ADA seeking "monetary relief against Commissioner Fitzpatrick in his official capacity" is barred by the Eleventh Amendment. *See Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 360 (2001). The Plaintiff's ADA claim fails on this basis as well.

[9]     In arguing to the contrary, the Plaintiff cites Maine's then-existing veterans' preference statute, 5 M.R.S.A. § 7054, *repealed by* P.L. 2015, c. 438, § 1 (effective July 29, 2016). I have been unable to locate any case law interpreting this statute or the newly enacted version. And there is nothing in the statute suggesting that it imposes individual liability or provides a private cause of action. Even if it did, Brandt would need to have exhausted his administrative remedies for this claim

### III.     42 U.S.C. § 1983—Count Five

Brandt seeks to amend his Complaint to add a claim under 42 U.S.C. § 1983 for "racial discrimination" against all of the Defendants. PAC ¶¶ 29-30. The Defendants insist that the PAC fails to state a plausible § 1983 claim because: (1) the Plaintiff has failed to plausibly allege causation, and (2) even if he had plausibly alleged causation, he has failed to link their conduct to race. MDOC Opp'n 9-10; Nash Opp'n 7-9.

#### A.     The Governing Law

Section 1983 provides remedies for individuals deprived of federal rights by state officials acting under color of state law. 42 U.S.C. § 1983. Unlike Title VII, the ADA, and the ADEA, which apply only to employers, § 1983 permits suit against persons in their individual capacities.[10] 42 U.S.C. § 1983; s*ee also Powell v. City of Pittsfield*, 143 F. Supp. 2d 94, 115 (D. Mass. 2001). "Section 1983 does not provide any substantive rights independent of those already granted under federal law," so "a plaintiff seeking to recover under that provision must . . . identify the specific constitutional [or statutory] right allegedly infringed." *Román-Oliveras*, 655 F.3d at 47 (citations omitted) (alteration in original). Given the allegations in the PAC, Brandt appears to be alleging that the Defendants violated the Equal Protection Clause of the Fourteenth Amendment.

---

before filing suit by "filing an appeal with the State Director of Human Resources, and ultimately, the Civil Service Appeals Board." MDOC Reply 3 (ECF No. 20) (citing 5 M.R.S.A. § 7083).

[10]     "A plaintiff may assert a concomitant employment discrimination Title VII and § 1983 claim." *Rivera v. P.R. Aqueduct & Sewers Auth.*, 331 F.3d 183, 192 n.7 (1st Cir. 2003) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48-49 (1974)).

The Fourteenth Amendment provides that no State shall "deny to any person . . . the equal protection of the laws." U.S. Const. Amend. XIV. For pleading purposes, a plaintiff must "allege facts plausibly demonstrating that compared with others similarly situated, [he was] selectively treated . . . based on impermissible considerations such as race." *Mulero-Carrillo v. Roman-Hernandez*, 790 F.3d 99, 106 (1st Cir. 2015) (citation omitted); *see also Rios-Colon v. Toledo-Davila*, 641 F.3d 1, 4 (1st Cir. 2011). At this stage of the litigation, a plaintiff "need not establish causation." *Medina-Velazquez v. Hernandez-Gregorat*, 767 F.3d 103, 111 (1st Cir. 2014) (citation omission). Because " '[s]moking gun' proof of discrimination is rarely available," a plaintiff need only show that causation is plausible as to each defendant. *Id.* (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 49 (1st Cir. 2012)); *see also Ocasio-Hernández v. Fortuno-Burset*, 640 F.3d 1, 16 (1st Cir. 2011).

Common law tort principles guide the causation inquiry under § 1983. *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 561 (1st Cir. 1989). It is well established that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Instead, "liability for public officials under section 1983 arises only if 'a plaintiff can establish that his or her constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization.' " *Grajales.*, 682 F.3d at 47 (quoting *Ocasio-Hernández*, 640 F.3d at 16). This standard can be satisfied by personal participation in the constitutional deprivation or "by setting in motion a

series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 50 (1st Cir. 2009).

With these background principles in mind, I turn to the allegations regarding each individual Defendant.

### B.     Application of the Governing Law to the Facts of The Case

#### 1.     Landry

Landry first challenges causation, contending that the PAC does not allege that "[he] either made the decisions or was involved in the decisions not to hire Brandt for the probation officer and probation officer assistant positions." MDOC Opp'n 9. Landry supervised two of Brandt's interviews. Brandt was not offered either of these positions. PAC ¶ 10. Viewing the PAC in the light most favorable to Brandt, his allegations raise a plausible inference that Landry's conduct directly led to the alleged constitutional deprivation—the decision not to hire Brandt.

Even assuming that the PAC has plausibly alleged causation, Landry contends that "the PAC is devoid of any allegations that link his conduct to Brandt's race." MDOC Opp'n 10. But Brandt has alleged that he is African-American, holds a master's degree, and is a former veteran and MDOC employee. He was recommended to be interviewed by human resources seven times but all of his interviews went poorly. Both interviews with Landry ended shortly after they began. And although the MDOC encouraged minorities, veterans, and current employees to apply, white applicants who did not work for MDOC were eventually hired for these positions. At this early stage, the cumulative weight of these allegations, taken as true and

drawing all reasonable inferences in Brandt's favor, support a plausible inference that Landry refused to hire Brandt because of his race.[11]

### 2. Nash

Turning to Nash, in terms of causation, the PAC alleges that Nash was in charge of several of Brandt's interviews. *See* PAC ¶¶ 10-11. Brandt was not hired after any of these interviews. PAC ¶ 10. During one interview, Nash "was extremely offensive and argued with [Brandt] when he began sharing his background and qualifications with the interview panel." PAC ¶ 13.  Like the allegations regarding Landry, it is similarly reasonable to infer that Nash was involved in the decision not to hire Brandt for these positions given her involvement in his interviews. And assuming the veracity of Brandt's well-pled allegations, they likewise support the reasonable inference that this decision was based upon race.

### 3. MDOC

To the extent Brandt seeks monetary relief for his § 1983 claim against the MDOC, it is barred by the Eleventh Amendment because "[a] lawsuit against a state official in his official capacity is a lawsuit against the State, and is prohibited in federal court by the Eleventh Amendment." *Nillson-Borrill v. Burnheimer*, 505 F. Supp. 2d 180, 181 (D. Me. 2007) (citing *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984)). Brandt, however, also seeks "[r]einstatement as a

---

[11] Landry argues that the PAC alleges that the decision not to rehire Brandt at MCC "was made because of Brandt's previous complaints to the former MDOC Commissioner and the [MHRC], not because of his race." MDOC Opp'n 10 (citing PAC ¶ 19). This argument misreads the PAC. Brandt claims that it was Landry's "*race-based and/or* retaliation-based . . . decision to ultimately not reinstate" him." PAC ¶ 19 (emphasis added).

correctional officer at the Maine Correctional Center in Windham." PAC Prayer for Relief. Reinstatement is the type of prospective relief that is not barred by the Eleventh Amendment under *Ex Parte Young*, 209 U.S. 123 (1908). *See Negrón-Almeda v. Santiago*, 579 F.3d 45, 53-54 (1st Cir. 2009). Thus, *Ex Parte Young* allows Brandt to proceed with his § 1983 claim for prospective injunctive relief against Fitzpatrick in his official capacity. Accordingly, leave to amend is granted.[12]

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Plaintiff's motion for leave to file an Amended Complaint. The Clerk's Office is directed to docket the Proposed Amended Complaint (ECF No. 15-1), along with the exhibits attached to the initial Complaint. (ECF No. 1-1). The Court **GRANTS** the Defendants' motions to dismiss as follows:

- Count One as to Defendants Nash and Landry;
- Count Two as to Defendants Nash and Landry;
- Count Three as to Defendants Nash and Landry;
- Count Four as to all Defendants; and
- Any claim for disability discrimination as to all Defendants.

The Defendants' motions to dismiss are otherwise **DENIED**.

SO ORDERED.

---

[12] In a footnote, the MDOC argues that "[t]o the extent that Brandt is seeking injunctive relief from Commissioner Fitzpatrick . . . in his official capacity . . . [t]he PAC fails to state a claim . . . for the same reasons that it fails to state a claim against Landry." MDOC Opp'n 7 n.5. Without a more developed argument from the MDOC on this issue—and because Fitzpatrick otherwise remains in this lawsuit—I do not address this argument at this time.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 5th day of December, 2016.