UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

CHRISTOPHER O. BRANDT, )
)
    *Plaintiff* )
)
v. ) No. 1:15-cv-00461-NT
)
JOSEPH FITZPATRICK, et al., )
)
    *Defendants* )

### *MEMORANDUM DECISION AND ORDER ON DEFENDANTS' JOINT MOTION TO QUASH OR MODIFY SUBPOENA*

In this employment discrimination and retaliation case, the defendants move pursuant to Federal Rule of Civil Procedure 45(d)(3) to quash or modify a subpoena commanding defendant Lisa Nash to produce to the plaintiff certain contents of a Maine Human Rights Commission ("MHRC") file generated as a result of a gender discrimination and retaliation complaint by Nash against the Maine Department of Corrections ("MDOC"), her co-defendant in this case. *See* Defendants' Joint Motion To Quash or Modify Subpoena ("Motion") (ECF No. 56) at 1. I agree with the defendants that the relevance of the materials sought to the plaintiff's claims of discrimination and retaliation is too attenuated to render those materials discoverable. *See* Motion at 5. Therefore, I grant the motion.

### I. Applicable Legal Standard

Federal Rule of Civil Procedure 45 provides, in relevant part, "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Fed. R. Civ. P. 45(d)(3)(A)(iii).

"A Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P.

26(b)(1)." *Green v. Cosby*, 152 F. Supp.3d 31, 34 (D. Mass. 2015), *modified on other grounds on recon.,* 160 F. Supp.3d 431 (D. Mass. 2016) (citation and internal quotation marks omitted). Pursuant to Rule 26(b)(1), unless otherwise limited by court order, the scope of discovery is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

## II. Factual Background

The plaintiff alleges that he was improperly denied promotions within the MDOC because of, *inter alia*, his race and age, and that the MDOC retaliated against him for filing his own complaint with the MHRC by denying him promotions for which he was qualified, and later, by not rehiring him. *See* Amended Complaint ("Complaint") (ECF No. 29) ¶¶ 1, 7-16, 22, 24, 26. He names Lisa Nash, a white female, as a defendant, for her role as the MDOC employee in charge of employee interviews in Portland, *see id.* ¶ 10, and for engaging in offensive behavior toward the plaintiff during one interview, *see id.* ¶ 13. Before filing his lawsuit, the plaintiff addressed his complaints in a letter to then-MDOC Commissioner Joseph Ponte. *See id.* ¶ 12. The plaintiff was employed by the MDOC for approximately two years before resigning in 2014. *See id.* ¶¶ 4, 7.

Nash filed her own complaint with the MHRC, claiming that she was the subject of gender discrimination and retaliation at the hands of officials at the MDOC in 2015 and 2016. *See* Motion at 5. On April 26, 2017, the plaintiff's counsel served Nash, c/o of Jeffrey N. Young, Esq., her

2

counsel in the MHRC matter, with a subpoena requesting the following: "1. in the matter of Lisa Nash – a copy of the Maine Human Rights Commission Charge of Discrimination form; 2. a copy of the dated and signed Nondisclosure Agreement by Lisa Nash; & 3. complete position statements, with exhibits, of the parties[.]" Subpoena To Produce Documents, Information, or Objects or To Permit Inspection of Premises in a Civil Action ("Subpoena"), Exh. A (ECF No. 56-1) to Motion, at Page ID # 287. On May 3, 2017, Attorney Young provided the plaintiff's counsel with an unredacted copy of the Nondisclosure Agreement and redacted copies of the other requested documents. *See* Motion at 1-2. During an earlier teleconference with the parties, I ordered the defendants to submit an unredacted version of the file for my *in camera* review. *See* Report of Hearing and Order Re: Discovery Dispute (ECF No. 50) at 3. I have reviewed the unredacted portions, and incorporate my findings into my ruling, as noted below.

### III. Discussion

#### A. The Plaintiff's Discrimination Claim

The plaintiff seeks information from a different legal proceeding to aid in establishing the facts in his own case. Specifically, he contends that evidence from Nash's MHRC complaint against the MDOC is discoverable because it is relevant as "circumstantial evidence of a discriminatory atmosphere at the Department, where employees who complain about what they reasonably believe to be discrimination are punished." Plaintiff's Response to Defendants' Joint Motion To Quash or Modify Subpoena ("Response") (ECF No. 57) at 1. It is undisputed that the records of the MHRC are confidential.[1]

The defendants argue that their motion to quash should be granted because none of the information the plaintiff seeks is relevant to his claim, as the facts, actors, timeline, and form of

---

[1] The plaintiff's subpoena seeks an unredacted copy of the Nondisclosure Agreement between the MHRC and Nash. *See* Subpoena at Page ID # 287.

3

alleged discrimination differ from those described in Nash's charge before the MHRC. *See* Motion at 5-6. The plaintiff's case involves a charge of race and age discrimination and retaliation, while Nash's case before the MHRC involves gender discrimination and retaliation. The plaintiff applied for positions as a probation officer and probation officer assistant within the Community Corrections section of the MDOC, the hiring panel for which included Nash, *see* Complaint ¶¶ 8, 10, while Nash's MHRC complaint alleges discriminatory behavior by an MDOC deputy commissioner and associate commissioner and a director from the Central Office in Augusta in connection with Nash's application for a director position in MDOC's Central Office, *see* Motion at 5. The plaintiff's complaint involves MDOC conduct in 2013 and 2014, while Nash's charge spans 2015 and 2016. *See id.*

In addition, as the defendants point out, *see* Defendants' Joint Reply Memorandum in Support of Motion To Quash or Modify Subpoena ("Reply") (ECF No. 58) at 2, the conduct of which Nash complains occurred solely during the tenure of current MDOC Commissioner Joseph Fitzpatrick, who assumed that post in April 2014, while the conduct of which the plaintiff complains occurred solely on the watch of former Commissioner Joseph Ponte, *see id*; Complaint ¶¶ 7-17 (describing conduct occurring through late 2013).

Further, the defendants note that, while Nash alleges that conduct under the tenure of Commissioner Ponte was more favorable to women than on Commissioner Fitzpatrick's watch, the plaintiff alleges that conduct during the tenure of Commissioner Ponte – including the conduct of Nash – was unfavorable to minority employees and candidates. *See* Reply at 3. Thus, to the extent that the plaintiff claims that a factual nexus exists because the plaintiff and Nash both name Commissioner Fitzpatrick, the commonality appears to be, at most, titular.[2] Factually, the claims

---

[2] As the defendants note, *see* Reply at 2, the plaintiff does not allege that Commissioner Fitzpatrick personally

4

of the plaintiff and Nash involve allegations of different forms of discrimination, different actors, and different divisions of the MDOC, taking place during different time periods.

In general, circumstantial evidence of discrimination is admissible to support an inference of discrimination. *See, e.g., United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3 (1983) ("[T]he plaintiff [in a discrimination case] may prove his case by direct or circumstantial evidence. The trier of fact should consider all evidence, giving it whatever weight and credence it deserves."); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1017 (1st Cir. 1979) (endorsing the use of circumstantial evidence to establish a claim of discrimination).

Evidence of past discriminatory conduct by an employer against employees other than the plaintiff, so-called "me too" evidence, is neither "*per se* admissible nor *per se* inadmissible." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008). Such evidence can go toward establishing a "corporate state-of-mind or a discriminatory atmosphere[.]" *Conway v. Electro Switch Corp.*, 825 F.2d 593, 597 (1st Cir. 1987).

Although evidence need not be admissible to be discoverable, it must be relevant to a party's claim or defense, and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case[.]" *Mendelsohn*, 552 U.S. at 387-88 (citation and internal quotation marks omitted).

The defendants' contention that the contents of the MHRC file are not discoverable because they are irrelevant to the plaintiff's allegation of discrimination finds support in the cases. Courts

---

participated in any of the alleged discriminatory acts, *see* Complaint ¶¶ 5, 7-17. Rather, he is sued in his official capacity only. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials are literally persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (citations omitted).

have found that evidence was not discoverable where it pertained to a different form of discrimination than that alleged by the plaintiff. *See, e.g.*, *Laurenzano v. Lehigh Valley Hosp., Inc.*, No. CIV. A. 00-2621, 2001 WL 849713, at *2 (E.D. Pa. July 18, 2001) (in a case alleging gender and disability discrimination, past complaints of age discrimination were not discoverable).

Courts have also limited discovery of "me too" evidence to the same unit or division and decisionmakers who allegedly discriminated against a plaintiff. *See, e.g., Sallis v. University of Minn.*, 408 F.3d 470, 477-78 (8th Cir. 2005) (trial court's order limiting discovery in a discrimination case to the division where plaintiff had been employed was not an abuse of discretion when plaintiff's allegations focused on the behavior of division's supervisors and he had spent the previous 10 years solely employed by that division); *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003) (district court did not abuse its discretion in limiting discovery in an age discrimination suit "to the relevant corporate department, similarly situated employees, time period, and decisionmakers"); *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1280 (11th Cir. 2002) (upholding trial court's denial of discovery seeking settlement agreements in sex discrimination case against decisionmaker not involved in the alleged discriminatory conduct against the plaintiff); *Aponte-Navedo v. Nalco Chem. Co.*, 268 F.R.D. 31, 37 (D.P.R. 2010) (noting that "[d]iscovery in disparate treatment cases has been limited to employees within certain work units and who have suffered similar treatment as the plaintiff") (citation and internal quotation omitted).

Because the information contained in Nash's MHRC file involves claims, actors, divisions, and timeframes different from the plaintiff's, it is not discoverable.

In response to the defendants' motion, the plaintiff asserts that both he and Nash allege that they were more qualified than the candidates chosen for the respective positions they applied for,

and notes that they were both informed that their performance in their interviews was the basis of their unsuccessful applications. *See* Response at 1. These similarities do not overcome the substantial differences between their cases, especially in light of the body of cases, cited above, that supports the defendants' argument to the contrary.

If anything, the status of Nash, as one of the MDOC employees with enough power to determine whether or not the plaintiff himself should or should not be selected to fill a position, undermines his own claim that both he and Nash were the victims of the MDOC's "good old boys network," *id*. at 2.

For all of these reasons, Nash's discrimination claim is too attenuated from that of the plaintiff to render the information in her MHRC file discoverable.

### B. The Plaintiff's Retaliation Claim

The plaintiff also asserts that because he and Nash were both the victims of retaliation by MDOC, that nexus is substantial enough on its own to justify denying the defendants' motion. *See id*. at 3. His argument on this point, in its entirety, is as follows:

> Even if race and sex discrimination are viewed as distinct causes of action and therefore perhaps justification to deny access to the information, the shared allegations of retaliation join the claims. The who, what, where, when and how are the same in both.

*Id*. This argument, in support of which the plaintiff cites no authority, arguably is sufficiently undeveloped to have been waived. *See, e.g.*, *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 140-41 (1st Cir. 2013) (plaintiffs' argument waived when "not fully developed, [and] lacking any citation to supporting authority (or even a persuasive explanation of what the law should be, assuming they found no authority").

In any event, it founders on the merits.

7

My research indicates that courts have found "me too" evidence of retaliation admissible when based on the same type of protected activity as that of a plaintiff. *See, e.g.*, *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1286 (11th Cir. 2008) (in case alleging racial discrimination and retaliation, "'me-too' evidence was admissible . . . to prove the intent of [the defendant] to discriminate and retaliate"; "There was also evidence that was probative of intent of [the defendant] to retaliate against any black employee who complained about racial slurs in the workplace."); *Griffin v. Finkbeiner*, 689 F.3d 584, 591, 597-99 (6th Cir. 2012) (in case alleging racial discrimination and retaliation, trial court erred in excluding "me too" evidence bearing on retaliation, including evidence that other employees who had filed affirmative-action complaints were fired, when it "improperly focused exclusively on whether the same person made each allegedly retaliatory personnel decision" without considering other factors "such as temporal and geographic proximity, whether the various decisionmakers knew of the other decisions, whether the employees were similarly situated in relevant respects, or the nature of each employee's allegations of retaliation").

While these cases considered the admissibility of evidence, which is, of course, a narrower inquiry than its discoverability, they are instructive in that a clear nexus existed between the type of protected activity at issue (*e.g.*, complaints of racial discrimination) and the alleged retaliation. Here, the plaintiff appears to be arguing, without actually doing so, that there existed at MDOC a culture of retaliation for complaints of *any* type of discrimination, without offering any facts or theories as to why that might be so. All the plaintiff offers is that he and Nash, two of surely many scores of MDOC employees, were allegedly retaliated against because they pressed a complaint of discrimination based on different immutable qualities, by different decisionmakers, at different times. This is too tenuous a connection to bridge the factual chasm that otherwise separates their

claims. In this connection, it is worth noting that the form of retaliation alleged by the plaintiff and Nash also differs: the plaintiff claims that he was not rehired by the department after he voluntarily left to join the Federal Bureau of Prisons, *see* Complaint ¶ 16, whereas Nash claims that she was fired, *see* Response at 2.

### C. Factual Relevance of Redacted Portions of MHRC File

The defendants also argue that, even assuming *arguendo* that the plaintiff's claim and Nash's claim are similar enough to render the MHRC file relevant and discoverable, the redacted portions are not, themselves, relevant to Nash's claim of discrimination. *See* Motion at 5-6. They assert that those portions of the file that they seek to protect "do[] not contain evidence to support Ms. Nash's claim of discrimination, but rather address[] her specific allegations and outline[] the Department's defenses to her particular case." *Id.* at 5.

Having reviewed the unredacted version of the file *in camera*, I agree. The redacted portions do not address Nash's claim of discrimination, evidence she asserts supports her allegation, or the details of her allegation. Rather, they bear on Nash's job performance, relied on by the MDOC in support of its argument that it terminated her employment for a legitimate, non-discriminatory reason. This has no relevance to the plaintiff's claims. My *in camera* examination, thus, bolsters my conclusion that the redacted contents of Nash's MHRC file are not discoverable.

### IV. Conclusion

For the foregoing reasons, the defendants' motion to quash the Subpoena is **GRANTED**.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 1st day of September, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge